UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dean A. Lanz,                                  Civil No. 05-2718 (DSD / SRN)

        Plaintiff,

                                          **REPORT AND RECOMMENDATION**

v.

Jo Anne B. Barnhart,
Commissioner of Social Security,

        Defendant.

---

      Jennifer G. Mrozick, 1611 W. County Rd. B., # 106, Roseville, MN 55113, for Plaintiff.

      Lonnie F. Bryan, Asst. United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; Rachel K. Paulose, United States Attorney; Kim Leslie Bright, Office of the Regional Chief Counsel, Social Security Administration; and Yvette S. Sanders, Asst. Regional Counsel, Social Security Administration (Of Counsel), for Commissioner.

---

This matter comes before the undersigned United States Magistrate Judge on the parties' cross motions for summary judgment (Doc. Nos. 13, 17). Pursuant to 42 U.S.C. § 405(g), Plaintiff Dean Lanz ("Plaintiff" or "Claimant") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner ruled that Plaintiff was not disabled and therefore not entitled to disability benefits under the Social Security Act.

This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1(b). For the reasons stated below, the Court recommends granting the Commissioner's motion for summary judgment and denying the Plaintiff's motion for summary judgment.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A.     Procedural History

On April 16, 2003, Plaintiff filed an application for supplemental security income under

the Social Security Act ("Act"), 42 U.S.C. §§ 416, 423, 1381a & 1382c.  He claimed that he had become disabled on April 12, 2002, due to a weakened immune system following a heart-lung transplant.  (Admin. R. at 71, 83-92.)

The Social Security Administration ("Administration") denied his application and denied it again on reconsideration.  (Id. at 36-43, 45-47.)  He requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ found that he was not disabled because his impairments did not preclude him from jobs of the type he had previously performed.  (Id. at 21-28.)

The Appeals Council denied his request for review.  (Id. at 10-12.)  Accordingly, the ALJ's decision became the Commissioner's final decision.  20 C.F.R. § 404.981.  This Court therefore has jurisdiction to review that final decision.  42 U.S.C. §§ 405(g), 1383(c)(3).

    **B.**    **Statement of Facts**

Plaintiff was 49 years old when he alleges he became disabled and he turned 50 years old in April 2003, when he protectively applied for supplemental security income, asserting a disability date of April 12, 2002.  (Admin. R. at 71, 83-84.)

Plaintiff was born with a congenital heart defect.  (Id. at 399, 473.)  He underwent a heart and lung transplant in 1997.  (Id.)  Following that surgery, he experienced problems with his immune system and complained of migraine headaches and negative side effects from the various medications he takes.

Plaintiff completed a Bachelor's degree from Winona State University in 1990.  (Id. at 475.)  He received his law degree from Hamline University School of Law in 1999 and passed the bar examination.  (Id. at 98, 452.)  He was employed full-time as a judicial law clerk from June 2001 to April 2002, when he was terminated.  As of January 1, 2005, his license to practice

law was placed on restricted status due to his financial inability to maintain his Continuing Legal Education requirements. (Id. at 452.)

### C.     The ALJ's Decision and Findings

The ALJ issued an eight-page decision, following the five-step sequential analysis outlined by the Secretary of Health and Human Services.[1] The ALJ first found that Plaintiff "has not engaged in substantial gainful activity at any time since April 16, 2003," the protective filing date of his application. (Admin. R. at 22.) With respect to the second step, the ALJ addressed Plaintiff's physical impairments, noting that "the record documents that the claimant underwent a heart/lung transplant in January 1997" and that he "has a mild restrictive ventilatory defect, with normal heart catheterization, and mild chronic renal failure." (Id.) "The record also documents occasional migraine headaches, and right foot pain localized to the fifth metatarsal base, with a diagnosis of degenerative arthritis of the foot, but documented imaging evidence of arthritis [sic]." (Id.) The ALJ then found that "these impairments would significantly interfere with the claimant's ability to perform basic work activities, and, therefore, constitute severe impairments." (Id.) Regarding mental impairments, the ALJ stated that the "record documents no evidence of any severe medically determinable mental impairment." (Id.)

Turning to the third step, the ALJ addressed whether any of these severe impairments constituted a listed impairment so as to render Plaintiff presumptively disabled under the Act. The ALJ found "no evidence of clinical, laboratory, or imaging findings sufficient to meet or

---

[1] The analysis essentially asks (1) whether the claimant is presently engaged in substantial gainful activity, (2) whether he has a severe impairment, (3) whether he has a presumptively disabling impairment as listed in the regulations, (4) whether he has the residual functional capacity to perform his past work, and (5) if he cannot perform such work, whether there are other jobs in the national economy that he can perform. E.g. Kelley v. Callahan, 133 F.3d 583, 587-88 (8th Cir. 1998).

equal the relevant criteria of any listed impairment, either when the claimant's impairments are considered singly, or in combination." (Id.)

Accordingly, the ALJ turned to determining the claimant's residual functional capacity. (Id.) Noting that "the claimant's complaints are subjective in nature," the ALJ stated that he "must evaluate the entire record in accordance with the standards set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), Social Security Ruling 96-7p, and 20 C.F.R. Section 416.929." (Id.) The ALJ noted that "[s]ubjective complaints may be discounted if there are inconsistencies in the record as a whole." (Id. at 23.)

The ALJ then provided an extensive and detailed analysis of Plaintiff's residual functional capacity. (Id. at 23-26.) Based on his review of the "entire record," the ALJ found that "since April 16, 2003, there has been no continuous period of at least twelve months during which the claimant has lacked the residual functional capacity for work requiring lifting 20 pounds occasionally and 10 pounds frequently, with standing/walking 6 hours in an 8 hour workday, and sitting 6 hours in an 8 hour workday, with no exposure to high levels of infected individuals." (Id. at 23.) Although the ALJ gave Plaintiff "the benefit of every doubt regarding his subjective complaints, and reduced his residual functional capacity accordingly," the ALJ found "no substantial support for further reduction in this residual functional capacity, due to significant inconsistencies in the record as a whole." (Id.)

The ALJ began by assessing the objective medical evidence and Plaintiff's course of medical treatment. The ALJ noted that Plaintiff stated that he stopped working as a law clerk in April 2002 due to his immune system causing frequent work absences, but the ALJ stated that "the record documents no [contemporaneous] evidence of medical visits" and, in fact, disclosed that as of January 7, 2002, Plaintiff reported being well in terms of his cardiopulmonary

4

condition and "was leading an active lifestyle working as a legal clerk." (Id.) Although Plaintiff was treated for a pulmonary embolism in February 2002, by April 22, 2002, he had largely recovered, with his only remaining condition, occasional headaches, being "well controlled" by medication. (Id.)

On August 26, 2002, Plaintiff's cardiorespiratory condition "remained well" and the right foot pain that he experienced in June 2002 "had mostly resolved." (Id.) On December 12, 2002, he "complained only of increased swelling in the lower legs" and "was noted to have some pitting edema in the lower extremities," which was treated with an increased dose of existing medications. (Id. at 23-24.)

The ALJ noted that Plaintiff was "seen for a right foot callous on June 5, 2003," which was treated. (Id. at 24.) On August 11, 2003, his echocardiogram was normal and he had no complaints of chest pain or shortness of breath, and his lungs were clear. (Id.) "He complained of some ankle swelling, and intermittent migratory joint pain, but reported he was looking for employment." (Id.)

Plaintiff informed his family physician in July 2004 that "he was doing quite well, with no complaints or concerns" and on August 9, 2004 "had no respiratory or cardiovascular problems." (Id.) He "denied any chest pain" or "shortness of breath, fever, cough, or chills." (Id.) His occasional migraines were helped with medication. "He had some ankle swelling, but his lungs were clear, and pulmonary function tests were stable." (Id.) He was noted "to have only mild systemic disease in October 2004." (Id.)

In January 2005, Plaintiff reported having right foot pain for some time but it was "noted that there was no obvious cause or trauma for the claimant's complaints." (Id.) The ALJ stated that limitations allegedly due to his foot pain were "inconsistent with the claimant's report in

5

April 2004 that he was walking on a daily basis, one and a half hours at a time." (Id.)

The ALJ noted that at the hearing Plaintiff attributed his termination from his law clerk position in part to his fatigue, which allegedly resulted from his medications, but the ALJ stated that "the medical record documents no significant complaints of fatigue or sleep deprivation to any treating source, and no complaints of any medication side effects. The only mention of fatigue in the record is in the hospital reports related to the claimant's pulmonary embolism in February 2002." (Id.) The ALJ also stated that "[i]n January 2002, the claimant indicated he was leading an active lifestyle working as a legal clerk, and was tolerating his medications well, and walking three times per week, for 20 to 30 minutes at a time, for exercise." (Id.) Reviewing Plaintiff's medical history through 2004, the ALJ similarly found no evidence of debilitating illness. (See id. at 24-25.)

As the ALJ summarized, the record did not support Plaintiff's claims of disability:

> Accordingly, the objective medical evidence is entirely inconsistent with the claimant's reports of frequent work absences due to illness, or due to fatigue related to sleep deprivation from medications, and resulting difficulties with concentration and focus. Further, the record documents reports of only occasional migraine headaches, well controlled with Imitrex, with no medical visits for evaluation of headaches, or treatment of intractable headaches. Further, in written reports, it is indicated that the claimant engages in a wide range of daily activities entirely inconsistent with disabling medication side effects, fatigue, concentration difficulties, or debilitating headaches. It is reported that the claimant is very clean and well-groomed, helps with cooking, washes dishes, does laundry, plays cards, works on a computer, attends meeting[s] two times per week, uses public transportation, shops, visits with family members, has friends, gets along well with authority and in groups, reads and does volunteer work. It is also noted that the claimant works fine under pressure, has no problems completing tasks, and requires no special supervision. It is noted only that he can't mow the lawn, shovel snow, or carry heavy items. This evidence is inconsistent with complete disability.

(Id. at 25.) The ALJ also cited Plaintiff's law school education and legal work history, noting that nothing in the record supported the claim that physical or mental impairments precluded

6

Plaintiff from continuing in that field.  (Id.) As the ALJ reiterated, "[t]his evidence is also inconsistent with complete disability."  (Id.)

The ALJ then summarized the findings with respect to Plaintiff's ability to work:

> Consulting medical sources employed by the State Agency opined that the claimant would be capable of at least light level work, and the undersigned finds this opinion completely supported by the claimant's reports to treating physicians, indicating no significant physical complaints, and the objective medical findings noted by treating physicians, indicating no significant medical restrictions.  As indicated, in January 2005, a physician indicated the claimant limited his standing and walking to less than 30 minutes at a time due to right foot pain, but the record documents no medical visits for right foot complaints until January 2005, and no specific treatment directed [to] foot complaints until that time.

(Id. at 25-26.)

The ALJ then provided the following assessment of residual functional capacity "based on the entire record in this matter":

> [T]he claimant has had the residual functional capacity for work requiring lifting 20 pounds occasionally and 10 pounds frequently, with standing/walking 6 hours in an 8 hour workday, and sitting 6 hours in an 8 hour workday, with no exposure to high levels of infected individuals.

(Id. at 26.)  The ALJ found, however, "no substantial support in the record as a whole for further reduction in this residual functional capacity."  (Id.)

With respect to the fourth step in the analysis–determining whether Plaintiff would be able to return to any of his past relevant work–the ALJ found credible and persuasive, and consistent with the record as a whole, the opinion of Steven Bosch, a neutral vocational expert, that Plaintiff would be able to return to all of his past relevant work as a law clerk, a position he had held for at least 10 months at the substantial gainful activity level.  (Id.)  The ALJ noted that although there were "some conflicting explanations" for Plaintiff's termination, "the record as a whole does not support the conclusion that the claimant was terminated based on any severe medically determinable physical [disability] documented in the record."  (Id.)  The ALJ found

7

that Plaintiff "performed the job of law clerk long enough for it to be considered past relevant work, and further finds that the claimant has the residual functional capacity to return to this work." (Id.)  Accordingly, the ALJ found the Plaintiff to be not disabled. (Id.)

Nevertheless, under the assumption that claimant would be unable to return to his past relevant work, the ALJ also addressed whether there would be other jobs he could perform in the national economy.  (Id. at 27.)   Because there were such jobs, the ALJ reiterated his finding that the claimant was not disabled.  (Id.)

Finally, the ALJ enumerated the following express findings: (1) that claimant had not engaged in substantial gainful activity at any time since April 13, 2003; (2) that claimant was "severely impaired" by various conditions "but that he does not have an impairment or combination of impairments that meets or equals the relevant criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1"; (3) that claimant's "subjective complaints and functional limitations are inconsistent with the record as a whole"; (4) that claimant "retains the residual functional capacity for work requiring lifting 20 pounds occasionally and 10 pounds frequently, with standing / walking 6 hours in an 8 hour workday, and sitting 6 hours in an 8 hour workday, with no exposure to high levels of infected individuals"; (5) that claimant's "impairments do not preclude him from returning to his past relevant work"; (6) that claimant "is a younger individual, with a law degree, who passed the bar examination in Minnesota, and has a history of skilled work as a law clerk"; (7) that "there are other jobs the claimant is capable of performing" in the national economy; and (8) that claimant "has not been under a disability as defined in the Social Security Act at any time since April16, 2003."  (Id. at 27-28.)

Plaintiff then sought judicial review of the ALJ's decision in this Court.

**II.    DISCUSSION**

### A. Standard of Review

The findings of the Commissioner are conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g). This Court's review of the Commissioner's final decision is deferential as that decision is reviewed "only to ensure that it is supported by 'substantial evidence in the record as a whole.'" Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003). This Court's task is confined to reviewing "the record for legal error and to ensure that the factual findings are supported by substantial evidence." Id.

The applicable "substantial evidence in the record as a whole" standard does not require a preponderance of the evidence, but rather only "enough so that a reasonable mind could find it adequate to support the decision." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). But this Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." Burnside v. Apfel, 223 F.3d 840, 843 (8th Cir. 2000). Thus, a "notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989) (internal citation omitted).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

Id. (internal citation omitted).

Nevertheless, this Court cannot reverse "merely because the evidence is capable of supporting the opposite conclusion." Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003). Thus, if the record permits one to draw two inconsistent positions and one of those represents the Commissioner's findings, this Court must affirm. Pearsall v. Mssanari, 274 F.3d 1211, 1217 (8th

Cir. 2001). This Court's task "is not to reweigh the evidence, and [the Court] may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." Harwood v. Apfel, 186 F.3d 1039, 1042 (8th Cir. 1999). Because "[t]he ALJ is in the best position to determine the credibility of the testimony," this Court defers to the ALJ's decisions on credibility. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).

In reviewing the ALJ's decision, this Court is "generally guided by the following factors": (1) the ALJ's findings regarding credibility; (2) the claimant's education, background, work history and age; (3) the medical evidence provided by the claimant's treating physicians; (4) the claimant's subjective complaints of pain and description of physical activity and impairment; (5) third parties' corroboration of the claimant's physical impairment; (6) vocational experts' testimony based on proper hypothetical questions that fairly set forth the claimant's physical impairment; and (7) consulting physicians' testimony. Brand v. Secretary of the Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**B.     Entitlement to Disability Benefits Under the Act**

Plaintiff is entitled to disability benefits if he suffers from a "disability." The Act generally defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1).

To determine the existence of a disability under the Act, the Administration engages in a "five-step sequential evaluation process" in which a claimant can be found not disabled at any of the five steps: (1) if the claimant is "doing substantial gainful activity," he is not disabled; (2) if

the claimant does "not have a severe medically determinable physical or mental impairment" meeting certain durational requirements, he is not disabled; (3) if the claimant has an impairment of a certain specified severity, he is conclusively disabled; (4) but if the claimant has a residual functional capacity such that he can still do his "past relevant work," he is not disabled; and (5) if the claimant "can make an adjustment to other work," based on his residual functional capacity, age, education and work experience, he is not disabled.  20 C.F.R. § 404.1520(a)(4).

Generally, the claimant has the burden to prove that he is disabled.  20 C.F.R. § 404.1512(a).  The Administration has recently clarified the respective burdens of production and of persuasion with respect to each of the five steps.  68 Fed. Reg. 51153 (Aug. 26, 2003) (stating rules are effective September 25, 2003).  The claimant bears the "dual burdens of production and persuasion through step 4 of the sequential evaluation process."  Id. at 51155.  Thus, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

Here, the ALJ found Plaintiff to be not disabled because he possessed a residual functional capacity that permitted him to perform the type of job he previously held.  On appeal to this Court, Plaintiff argues that the ALJ (1) failed to properly apply the "grid" applications in 20 C.F.R. Subpart P; (2) improperly rejected a treating physician's opinion and substituted his own opinion, and (3) erred in applying the law regarding the assessment of Plaintiff's credibility.  (Mem. at 6-9.)

      **C.**    **A Finding of Disability Is Not Dictated by Table 1 of the Medical-Vocational Guidelines**

Plaintiff first claims that the ALJ erred in applying Table 1 of the Medical-Vocational Guidelines of Subpart P.  (Mem. at 6.)  The table directs conclusions on whether a particular claimant is disabled based on three criteria: (1) age, (2) education, and (3) previous work experience.  See 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table 1 ("Table 1").  Plaintiff contends that he is entitled to a finding of being "disabled" because, in conjunction with his educational level and inability to perform past work, he turned 50 during the pendency of these proceedings.  (Mem. at 6 (citing Table 1, Section 201.14).)

The ALJ stated that "[a]t all times relevant to this adjudication, the claimant has been a younger individual."  (Admin. R. at 27.)  Plaintiff was born April 27, 1953.  (Id. at 71.)  He filed his application for benefits in April 2003, claiming a disability date of April 12, 2002.  (Id.)

As the Commissioner concedes, Plaintiff–after his fiftieth birthday in April 2003–would have been properly "classified as an individual 'closely approaching advanced age' (50 to 54 years old)."  (Mem. at 23.)  But as the Commissioner also contends, in order to support a directed finding that the claimant is "disabled," Table 1 also requires–even for someone in that age group–(1) that the claimant's high school or greater educational level "does not provide for direct entry into skilled work," and (2) that the claimant's skilled or semi-skilled previous work experience involves "non transferable" skills.  (Id. (citing Table 1, Section 201.14).)

The vocational expert's analysis of Plaintiff's prior work as a law clerk concluded that such work constituted "skilled" work that involved various "transferable" skills.  (Admin. R. at 151.)  That expert also testified at the hearing before the ALJ that Plaintiff's skills were transferable.  (Id. at 479.)  The ALJ found the expert's "opinion credible and persuasive, and consistent with the record as a whole."  (Admin. R. at 26.)  Accordingly, Section 201.14 of Table 1 would not apply.

The ALJ also found that Plaintiff "would be capable of at least light level work." (Admin. R. at 25.) Such a finding would remove Plaintiff entirely from Table 1, which applies to those "limited to sedentary work." Accordingly, this Court cannot conclude, from its review of the entire record, that the ALJ erred in this regard.

### D. The ALJ Did Not Improperly Discount Any Medical Opinions

Plaintiff next argues that the ALJ "did not rely on *any* physician's medical opinion and instead substituted his own lay opinion with regard to the claimant['s] residual functional capacity." (Mem. at 6 (emphasis in original).) Plaintiff apparently claims the ALJ improperly ignored the opinion of Dr. Thomas A. Retzinger, M.D. (Id. at 5.)

In a January 2005 letter, Dr. Retzinger stated that Plaintiff presented "with a two year history of pain in the right foot with a history of trauma." (Admin. R. at 244.) He diagnosed Plaintiff as having "degenerative arthritis of the foot. The foot causes him to limit his standing to less than ½ hour at a single time and walking less than ½ hour [at] a single time. He has tried multiple medications for pain relief, all of which seem to be only transiently helpful." (Id.) (Dr. Retzinger's opinion was thus confined to Plaintiff's arthritis in his foot; it did not address any other impairments, such as Plaintiff's problems with his immune system, migraines or medication side-effects.)

The Commissioner counters that the ALJ "reasonably rejected this opinion because it was inconsistent with the other record evidence." (Mem. at 20.) The Commissioner also contends that "the ALJ did not reach his 'own' conclusion but relied on the record evidence as a whole." (Id.)

An ALJ should generally accord "substantial weight" to a treating physician's opinion. E.g. Ghant v. Bowen, 930 F.2d, 633, 639 (8th Cir. 1991). The Administration "generally give[s]

13

more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Here, the ALJ did not improperly discount or reject Dr. Retzinger's opinion. It must first be noted that the ALJ acknowledged that the record disclosed "right foot pain . . . with a diagnosis of degenerative arthritis of the foot, but documented imaging evidence of arthritis." (Admin. R. at 22.)[2] In fact, the ALJ found that this condition, among others, constituted a severe impairment. (Id.) The ALJ also noted, however, that Plaintiff's foot pain constituted a subjective complaint that, therefore, had to be evaluated under the standards of Polaski v. Heckler. (Id.) Evaluating this asserted complaint, the ALJ found that there were "significant inconsistencies in the record as a whole." (Id. at 23.)

Dr. Retzinger's January 2005 diagnosis stated that Plaintiff had a two-year history of foot pain, indicating that the problem existed from early 2003 through the end of 2004. Yet, as the ALJ pointed out, an August 2004 Progress Note disclosed that Plaintiff "walks for approximately one and a half hour per day." (Admin. R. at 227.) Similarly, a May 2003 form indicates that Plaintiff "[t]akes a daily walk." (Id. at 103.) The Court notes that Plaintiff has engaged in this activity dating back to at least January 2001. (Id. at 372.)

Nor does the period immediately before the relevant time-frame of 2003 through 2004 disclose a disabling impairment in this regard. An August 2002 report stated that pain the Plaintiff had experienced in his right foot during June had "resolved for the most part." (Id. at

---

[2] This appears to involve a typographical error–that the ALJ meant that the record contained the diagnosis of arthritis, "but [no] documented imaging evidence of arthritis." As the ALJ indicated later in his decision, although Plaintiff reported in January 2005 having "right foot pain for quite some time," "[i]t was [also] noted that there was no obvious cause or trauma for the claimant's complaints, and he was to undergo x-rays for further evaluation. The record contains no x-rays reports [sic], however." (Admin. R. at 24 (emphasis added).)

14

399.)

Contrary to Plaintiff's argument, the ALJ's analysis is thus not his own medical opinion, much less one improperly substituted for that of Dr. Retzinger. Rather it is the result of his consideration–as required by law in assessing a claimant's reported symptoms–of Plaintiff's activities. 20 C.F.R. § 404.1529(a), (c)(3), (c)(4) (permitting consideration of, e.g., claimant's "daily activities"). In sum, the ALJ evaluated the evidence purporting to support the physician's opinion and found it inadequate.

### E. The ALJ Properly Evaluated Plaintiff's Credibility With Respect To His Subjective Complaints

Finally, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. Plaintiff asserts that the ALJ erred as a matter of law in not considering and evaluating all of the factors articulated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and Social Security Ruling 96-7p. (Mem. at 8-9.)

The ALJ began his assessment of Plaintiff's credibility, however, by expressly noting that the standards of "Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), Social Security Ruling 96-7p ("SSR 96-7p"), and 20 C.F.R. Section 416.929" required the ALJ

> to give full consideration to all the evidence relating to a claimant's subjective complaints, including the claimant's prior work history, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities; duration, frequency and intensity of pain and other subjective complaints; precipitating and aggravating factors; dosage, effectiveness, and side effects of medications; other treatment measures; and functional restrictions.

(Admin. R. at 22-23.)

The ALJ also recognized that "[s]ubjective complaints may be discounted if there are inconsistencies in the record as a whole." (Id. at 23.) Although the ALJ stated that he gave "the claimant the benefit of every doubt regarding his subjective complaints" in terms of specifying

claimant's residual functional capacity, he found "no significant support for further reduction in this residual functional capacity, due to significant inconsistencies in the record as a whole." (Id.)

Plaintiff apparently contends that the ALJ was required to expressly address the following factors separately: (1) Plaintiff's daily activities; (2) the nature of his symptoms; (3) precipitating and aggravating factors; (4) the impact of any medications he takes; (5) other treatments he receives; (6) non-treatment measures he uses; and (7) any other factors. (Mem. at 8 (citing SSR 96-7p).) Yet Plaintiff neither elaborates on which particular factors are implicated here nor discusses any facts of record to establish that any of the implicated factors would support a finding of disability.

Although it might be preferable for the ALJ to expressly address each of the enumerated factors individually, there is no reversible error where it is clear that the ALJ's evaluation of the evidence reflects that each factor was considered. Burns v. Sullivan, 888 F.2d 1218, 1219-20 (8th Cir. 1989).

Here, it is clear that the ALJ adequately considered and addressed those factors that could have been at issue. First, the ALJ expressly cited support in the record that Plaintiff's daily activities–notably Plaintiff's habit of taking daily walks and engaging in other activities requiring physical exertion–were inconsistent with a finding of complete disability. (Admin. R. at 23.)

Second, the ALJ did in fact address the nature of Plaintiff's symptoms, expressly recounting the bases for his claim of disability and then devoting several pages to an extensive discussion of the validity of those asserted impairments. (Id. at 22-25.) Third, there appears to be no issue of precipitating and aggravating factors and thus it cannot have been a reversible

16

error for the ALJ to have not expressly addressed this factor.

Fourth, the ALJ did in fact discuss the impact of any medications Plaintiff takes, concluding that there was no medical evidence to support Plaintiff's assertion that the side-effects of the medication contributed to his inability to work.  (Id. at 23-24 (noting that Plaintiff, at three different times, was "tolerating his medications well").)  The ALJ thus concluded that "the objective medical evidence is entirely inconsistent with the claimant's reports of" medication side effects, and that his pattern of daily activities was "entirely inconsistent with disabling medication side effects."  (Id. at 25.)

Finally, with respect to other treatments a claimant receives and any non-treatment measures he uses, there appears to be no evidence in the record one way or the other.  Accordingly, it was not reversible error for the ALJ to not expressly discuss those factors.

In sum, the Court notes that while it might be possible to draw inconsistent conclusions from the evidence, the ALJ's decision must be affirmed "where the evidence as a whole supports either outcome."  Bates v. Chater, 54 F.3d 529, 532 (8th Cir. 1994).  This Court does "not reweigh the evidence presented to the ALJ, and it is 'the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.'"  Id. (internal citations omitted).

Here, the ALJ clearly found claimant's credibility lacking and ruled accordingly.  The courts "'will normally defer to'" an ALJ's decision where "'an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"  Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (internal citation omitted).  Based on a review of the record as a whole, this Court cannot conclude that the ALJ's determination regarding Plaintiff's credibility was not based on substantial evidence.  Cf. Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (affirming

ALJ's finding that Plaintiff was not credible in part due to his "potential lack of motivation to return to work").

## III.   CONCLUSION

After reviewing the entire record, this Court cannot conclude that the ALJ made any errors of law or that the ALJ's decision was not supported by substantial evidence in the record as a whole.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Docket No. 13), be DENIED; and

2. Defendant's motion for summary judgment (Docket No. 17), be GRANTED.


Dated:  December 12, 2006

   s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by December 28, 2006, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.